UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:13-CV-931-B |
| JOE C. BALLENGER, SR., JOE C. BALLENGER, JR., JOE C. BALLENGER, JR. AS TRUSTEE OF THE JOE C. BALLENGER, JR. TRUST, and VAL TEX ASPHALT AND ENVIRONMENTAL RECYCLING, INC. | § § § § § § § § § | |
| Defendants. | § | |

## ORDER

Before the Court is a Motion to Transfer Venue (doc. 15) and Supplemental Motion to Transfer Venue (doc. 18), filed by Defendant Joe C. Ballenger, Sr., and a separate Motion to Transfer Venue (doc. 16), filed by Defendants Joe C. Ballenger, Jr., individually as Trustee of the Joe C. Ballenger, Jr. Trust, and Val Tex Asphalt and Environmental Recycling. For the following reasons, the Court **GRANTS** Defendants' Motions to Transfer Venue.

## I.

## BACKGROUND

In this action, Defendants solicited Plaintiff Liberty Mutual ("Liberty Mutual") to issue performance and payment of bonds in connection with Defendants' construction projects in the State of Texas. Doc. 1, Pl.'s Orig. Compl. at 2. On May 11, 2010, Liberty Mutual and Ballenger

Construction Inc., together with the other defendants in this case ("Defendants"), executed a General Agreement of Indemnity ("the Agreement"). *Id.* The Agreement indemnifies Liberty Mutual against any loss associated with the payment of bonds in connection with Defendants' construction projects in the State of Texas. *Id.* ¶¶ 8-10.

After execution of the Agreement, Liberty Mutual issued payment and performance bonds in favor of Defendants' construction projects. *Id.* ¶ 13. Shortly thereafter, numerous claims were received by Liberty Mutual alleging that Defendants had failed to make payments to their subcontractors and suppliers. *Id.* ¶ 14. Liberty Mutual paid many of these claims and, in addition, provided Defendants with at least $16.6 million in financial assistance related to the bonds. *Id.* ¶ 15. Defendants declared bankruptcy on December 7, 2012. Doc. 15, Def.'s Mot. to Trans. Ven. at 2. Under its bond obligations, Liberty Mutual proceeded in issuing bonds to complete Defendants' construction projects. Doc. 1, Pl.'s Orig. Compl ¶ 17. Liberty Mutual alleges that, as a result these obligatory actions, it has suffered and will continue to suffer substantial losses for which it has not been compensated in accord with the Agreement. *Id.*

On March 1, 2013, Liberty Mutual filed a Complaint (doc. 1) alleging Defendants' breach of the Agreement and claims for exoneration and collateralization. On April 16, 2013, Defendants filed the present Motions to Transfer Venue (doc. 15, 16), including a May 2, 2013 supplemental Motion (doc. 18). The Motions have been fully briefed and are ripe for review.

## II.

## LEGAL STANDARDS

A district court may transfer a civil action to another district or division where the action could have been brought originally. 28 U.S.C. § 1404(a). To demonstrate why an alternate venue

is appropriate, a defendant must first prove that the suit could have been filed originally in the destination venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). Although a plaintiff has the privilege of choosing where to file its complaint, § 1404(a) "tempers the effects of the exercise of this privilege." *Id.* at 313. The party seeking transfer bears the burden of showing good cause for transferring a case to an alternate forum. *Id.* at 314. "[T]o show good cause means that a moving party . . . must satisfy the statutory requirements [of 28 U.S.C. § 1404(a)] and clearly demonstrate that a transfer is 'for the convenience of the parties and witnesses, in the interest of justice.'" *Id.* at 315 (internal alteration ommitted).

Courts balance private and public factors to assess the interests of convenience and justice. *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). "The private factors are: '(1): the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* at 315 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). "The public interest factors are: '(1): the administrative difficulties following from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id.* (internal alterations omitted). Although these factors are appropriate in most cases, they are not an "exhaustive" list. *Id.* Other public interest factors that may be used to determine whether transfer is proper include "the pendency of related litigation in another forum." *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 562 (N.D. Tex. 2003).

In the event that a forum selection clause is part of the transfer analysis, the Court treats the

forum selection clause as "a significant factor that figures centrally in the court's calculus." *Id.* at 563 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "The degree of deference accorded to a forum selection clause varies depending on whether the movant has filed a motion to dismiss for improper venue or a motion to transfer venue." *Id.* at 561. Where a permissive forum selection clause limits defenses based on an alleged lack of personal jurisdiction, improper venue, or forum non conveniens, the language precludes a motion for dismissal on these grounds but does not extend to preclusion of a defendant's ability to request a transfer of venue under 28 U.S.C. § 1404(a). *Id.* at 563.

If balancing these private and public factors demonstrates that the alternative venue is "clearly more convenient," a court should transfer the case to the alternate venue. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

## III.

## ANALYSIS

A.    *Subject-Matter Jurisdiction Pursuant to § 1332(a)*

In addressing a Motion to Transfer Venue, the Court must first address whether it has jurisdiction to hear this case. Liberty Mutual is a Massachusetts corporation with its principal place of business in Massachusetts, and Defendants are domiciliaries of Texas. Doc. 1, Pl.'s Orig. Compl. at 1-2. Additionally, Liberty Mutual is seeking more than $75,000 in damages. *Id.* ¶ 15. Because the parties are diverse and the amount in controversy exceeds $75,000, *id.* ¶ 6, the Court has subject-matter jurisdiction pursuant to 28. U.S.C. § 1332(a).

B.    *Proper Venue Pursuant to § 1391(b)(1)*

In order for the Court to conduct a transfer analysis, the plaintiff must have been able to

originally file its claim in the destination venue. 28 U.S.C. § 1404(a). Venue is proper where "any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Defendants Joe C. Ballenger, Sr., Joe C. Ballenger, Jr., individually and as trustee, and Val Tex Asphalt and Environmental Recycling, Inc. are domiciled in the Southern District of Texas. Doc. 1, Pl.'s Orig. Compl. ¶¶ 2-5. Therefore, Liberty Mutual could have properly filed its complaint in the Southern District of Texas.

C.    *Motion to Transfer Venue Pursuant to §1404(a)*

Defendants seek transfer to the Southern District of Texas. Liberty Mutual presents two reasons why the court should not transfer the case. First, Liberty Mutual argues in opposition that Defendants have waived their right to transfer venue by signing the Agreement, which allegedly included a forum selection clause. Doc. 21, Resp. of Pl. to Mot. to Trans. Ven. at 1. Second, Liberty Mutual argues that Defendants cannot prove that transfer to the Southern District of Texas is "clearly more convenient." *Id.* at 2.

In order to determine whether the case should be transferred, the Court weighs the following private and public interest factors. The Court addresses the alleged waiver of Defendants' right to seek transfer as a separate factor in its analysis.

1.    Private Interest Factors

a.    *Relative ease of access to sources of proof*

Defendants argue that much of the relevant information and many of the witnesses necessary for the resolution of this case are located in the Southern District of Texas, where the construction projects were completed and the alleged default occurred. Doc. 15, Def.'s Mot. to Trans. Ven. at 4. Therefore, Defendants argue that it would be unnecessarily burdensome to require that this

information and these witnesses be transported to the Northern District. *Id.* In response, Liberty Mutual asserts that Liberty Mutual's "hub for addressing the default of [Defendants] on its contracts is in its Richardson office." Doc. 21, Resp. of Pl. to Mot. to Trans. Ven. at 8. Liberty Mutual argues that the records that will be the sources of proof in this litigation are located in its office in the Northern District of Texas. *Id.* at 8-9. Furthermore, Liberty Mutual points out that there is also relevant information located in the Western District of Texas. *Id.* Given the geographic diversity of the information, witnesses, and other sources of proof in this case, which are indeed "scattered throughout the State of Texas," *id.*, the relative ease of access to sources of proof factor is of neutral weight.

> b.    *The availability of compulsory process to secure the attendance of witnesses*

Defendants argue that the key construction projects and witnesses associated with these projects, which are integral to Defendants' counterclaims and defenses in this case, are located in the Southern District of Texas. Doc. 28, Def.'s Repl. to Resp. of Pl.'s Mot. to Trans. Ven. at 6. Defendants argue that substantially more witnesses are located in the Southern District of Texas than in the Northern District of Texas and the federal court subpoena powers are limited. *Id.* If the case is not transferred, Defendants argue, "the availability of process to compel the attendance of unwilling witnesses will be impacted." *Id.* Liberty Mutual counters that compulsory process will be largely unnecessary in this case and that where compulsory process may be necessary, witnesses are scattered across Texas, making it equally challenging to compel the attendance of witnesses in the Northern District as it would be in the Southern District. Doc. 21, Resp. of Pl. to Mot. to Trans. Ven. of Defs. at 9-10. The fact that witnesses are located in three different districts tends to show that the compulsory process factor is of neutral weight.

       c.       *The cost of obtaining the attendance of willing witnesses*

Given the diverse locations of witnesses in this case, the witnesses will be required to travel at some cost regardless of the venue. However, substantially more witnesses are located in the Southern District than the Northern District where Liberty's office is located. Because the cost of obtaining the attendance of willing witnesses would be greater if this case remains in the Northern District, the cost of obtaining willing witnesses weighs in favor of transfer.

       d.       *Other practical problems that make litigation easy, expeditious, and inexpensive*

Defendants argue that there are a number of pending actions in the Southern District of Texas that are directly related to this case. Doc. 15, Def.'s Mot. to Trans. Ven. at 6. Liberty Mutual, its representative, and its counsel will therefore be litigating in the Southern District of Texas regardless of whether this case is transferred there. *Id.* Furthermore, Liberty Mutual's attorneys have already appeared numerous times for hearings in the Southern District regarding Ballenger's bankruptcy, an issue to which Liberty Mutual's action in this case is related. *Id.* Liberty Mutual posits that Ballenger's bankruptcy case has slowed, resulting in its less frequent appearances in the Southern District. Doc. 21, Resp. of Pl. to Mot. to Transfer Venue of Defs. at 11. However, Ballenger's bankruptcy case is yet unresolved. *Id.*  Furthermore, there are additional cases being litigated in the Southern District which share similar facts, issues, and information with this case. Doc. 18, Def. Joe C. Ballenger Sr.'s Supp. Mot. to Trans. Ven. at 1-2. Due to the similarity of these cases, it would be more convenient for all concerned parties if the cases were handled together in the Southern District of Texas. The availability and convenience of witnesses and parties factor weighs in favor of transfer.

The Court next considers the possibility of delay and prejudice if the case is transferred. The

2012 Annual Report of the Director of the Administrative Office of the United States Court shows that the median time intervals from case filing until disposition are more or less the same for cases proceeding in the Northern and Southern Districts of Texas. Doc. 15, Def.'s Mot. to Trans. Ven. at 7. While the median time intervals from case filing until disposition are slightly shorter in the Northern District, the benefit of keeping the case in the Northern District is negligible. For this reason, the Court determines that the possibility of delay and prejudice factor is of neutral weight.

Next, although Liberty Mutual has the privilege of choosing where to file its complaint, § 1404(a) "tempers the effects of the exercise of this privilege." *In re Volkswagen of Am., Inc.*, 545 F.3d at 313. While Liberty Mutual's choice should be, and is, given appropriate consideration in the Court's analysis, transfer to the Southern District in this case would have a positive impact on the convenience of litigation for both the parties and the court. As such, this factor does not weigh against transfer.

    2.    <u>Public Interest Factors</u>

        *a.*    *Local interest*

Defendants argue that the underlying issues in this case affect businesses and individuals located in the Southern District of Texas. Doc. 28, Def.'s Reply to Resp. of Pl.'s Mot. to Trans. Ven. at 8-9. Additionally, Defendants have executed construction projects in the Southern District. *Id.* Defendants point out that, as a result, there have been multiple news stories written concerning the construction projects and the Ballenger bankruptcy, which are directly relevant to this case. *Id.* There is at least some interest in having this matter resolved locally. *Id.* The Court determines that the local interest factor weighs in favor of transfer.

b.  *Applicable law*

Both parties agree that this case is governed by Texas law. *Id.* at 9. The Northern and Southern Districts of Texas are equally capable of applying Texas state law. This factor is therefore neutral.

c.  *Related Litigation*

The list of public and private interest factors most commonly used by courts in addressing transfer of venue are not "exhaustive," and courts are permitted to consider other factors that may be relevant in deciding whether a case should be transferred. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. One of these additional factors is the "pendency of related litigation in another forum." *Wyly v. Computer Assocs. Int'l, Inc.*, No. 3-04-CV-1984-B, 2005 U.S. Dist. LEXIS 19027, *8 (N.D. Tex. Sept. 1, 2005). Liberty Mutual claims it is not aware of "any authority . . . standing for the proposition that factually related actions should all take place in a single district." Doc. 21, Resp. of Pl. to Mot. to Trans. Ven. at 13. While it is true that factually similar cases need not always take place in a single forum, it is in the interest of judicial economy for cases resulting from similar facts and issues to be handled together. In this case, as Defendants point out, it is the Ballenger bankruptcy and alleged default that "spawned the numerous lawsuits in the Southern District of Texas," many of which also involve Liberty Mutual. Doc. 28, Def.'s Reply to Resp. of Pl.'s Mot. to Trans. Ven. at 10. Moreover, since the date that Defendants filed their Motions to Transfer Venue, Liberty Mutual itself has filed an additional lawsuit against Ballenger Construction Company's accountant in the Southern District of Texas. Doc. 18, Def.'s Supp. Mot. at 1. Notably, Liberty Mutual seeks the same damages in that case that it seeks in this case. *Id.* Not only is this filing directly related to the issues in the case at hand, Liberty Mutual's action reveals that it has no

- 9 -

reservations about litigating similar issues in the Southern District of Texas. The Court concludes that the inherent interrelatedness of the related litigation in the Southern District of Texas greatly tips the balance in favor of transfer.

>   3.      Waiver of Right to Transfer Under the Forum Selection Clause

The Court must also consider the existence of a forum selection clause as an additional factor in its transfer analysis. *Von Graffenreid,* 246 F. Supp. 2d at 563. Liberty Mutual argues that the Agreement contains a clause which precludes a motion to transfer venue under 28 U.S.C. § 1404(a). Doc. 21, Resp. to Mot. to Trans. Ven. at 1-2, 6-7. The clause states the following:

> As to any legal action or proceeding related to this Agreement, the [Defendants] consent to the general jurisdiction of any local, state or Federal court of the United States or its territories having proper subject matter jurisdiction or in any court of the United States or its territories in which any claim may be brought against the [Plaintiffs] under any Bonds, and waive any claim or defense in any such action or proceeding based on the alleged lack of personal jurisdiction, improper venue, forum non conveniens, or any similar basis.

Doc. 15, Def.'s Mot. to Trans. Ven. at 2.

While the Court gives substantial weight to the existence of a valid forum selection clause, "[t]he degree of deference accorded to a forum selection clause varies depending on whether the movant has filed a motion to dismiss for improper venue or a motion to transfer venue," as the remedies for each are distinct. *Von Graffenreid,* 246 F. Supp. 2d 553 at 561. The language of the clause is of the most import. This rule is especially applicable to the case at bar, where the language of the Agreement only purports to waive any "claim" or "defense" based on venue, and not motions to transfer venue, and where the clause does not actually contain a chosen venue.

Liberty Mutual alleges that the rule in *Von Graffenreid* was undercut by a more recent Fifth Circuit decision which "equated" a forum non conveniens analysis with a § 1404(a) motion to

transfer analysis. Doc. 21, Resp. of Pl. to Mot. to Trans. Ven. at 6-7. Therefore, Liberty Mutual argues, the distinction between a § 1404(a) motion to transfer and a Rule 12(b) motion for dismissal in relation to a permissive forum selection clause is no longer valid. *Id.* As Defendants persuasively counter, however, solely because the analytical factors for forum non conveniens and transfer of venue for convenience are similar does not mean that the concepts themselves are the same. Nor does it mean that the holding in *Von Graffenreid* has been overruled. The rationale in *Von Graffenreid* is sound: a waiver of a right to seek dismissal for improper venue under a permissive forum selection clause is not the same as a waiver of a right to seek transfer for convenience under 28 U.S.C. § 1404(a). Under that rule and pursuant to the language of the Agreement, Defendants may seek a transfer of venue for convenience, even if they have waived the right to claim the *defense* of dismissal for improper venue. In the instant case, the forum selection clause is permissive and does not prevent transfer to the Southern District of Texas.

While many of the factors considered in the venue transfer analysis are of neutral weight, the cost of obtaining willing witnesses, the availability and convenience of witnesses and parties, the local interest in deciding the case, and the pendency of related litigation in the destination forum all weigh in favor of transfer to the Southern District of Texas. Accordingly, the Court concludes that Defendants have shown good cause for transfer to the Southern District of Texas, given that the alternative venue is "clearly more convenient" than litigating in the Northern District of Texas.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Transfer Venue (doc. 15, 16, 18) and **ORDERS** the case **TRANSFERRED** to the United States District Court for

the Southern District of Texas.

SO ORDERED.

Dated: July 3, 2013.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE